**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. TRACY L. MESSINEO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-15-493-M |
| | ) | |
| 1. SEQUOYAH ENTERPRISES, INC, | ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| Defendant. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

**COMES NOW** the Plaintiff, Tracy L. Messineo, and for her Complaint in the above-entitled action, alleges and states as follows:

**PARTIES**

1. Plaintiff, Tracy Messineo, is an adult female resident of Oklahoma County, Oklahoma.

2. Defendant Sequoyah Enterprises, Inc., is an entity doing business in Oklahoma County, Oklahoma.

**JURISDICTION AND VENUE**

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and (b) whistleblowing in violation of Oklahoma state law.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law

claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. Defendant is doing business in Oklahoma County. Defendant may be served in Oklahoma County. Oklahoma County is located in the Western District of Oklahoma. And, many of the actions complained of herein occurred in Oklahoma County, including Plaintiff's termination. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 9, 2014. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated February 12, 2015 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff, Tracy L. Messineo, was born in 1970, making her over the age of forty (40) at all times relevant to this action.

8. Messineo was hired as Director of Human Resources for Defendant on or about February 17, 2014 by then-Director of Human Resources Christy Miller and CEO Jim Harris. Messineo was hired as Miller's replacement.

9. Defendant operates group homes for juveniles and adults with developmental disabilities (hereinafter referred to as "clients"). The juvenile clients are in the custody of the Oklahoma Office of Juvenile Affairs ("OJA"). The adults with developmental

disabilities suffer from a range of medical conditions, including conditions that prohibit the individual from effectively communicating with others.

10. Defendant is required to abide by all policies and procedures of the Oklahoma Department of Human Health - Developmental Disabilities Services Division ("DDSD"). DDSD performs audits of Defendant's facilities and has the authority to suspend state funding to Defendant, should Defendant be non-compliant with DDSD regulations.

11. Messineo worked with Miller until Miller's last day in or around the first week of March 2014. Thereafter, Messineo noticed inconsistencies with Defendant's hiring records. For instance, Messineo discovered that individuals were being hired to work with Defendant's clients before background check results were obtained for each individual.

12. DDSD prohibits facilities that provide care to juveniles and adults with developmental disabilities from employing individuals with certain criminal offenses, including sex offenders and violent offenders, to work with Defendant's clients. Individuals were also required to have DDSD mandated training and certifications before working with such clients.

13. Despite DDSD requirements, Plaintiff discovered that Defendant allowed individuals that had not been cleared by background checks and/or who had not received the training required by DDSD to work with its clients. In doing so, Defendant placed its vulnerable clients at risk of abuse, violence, and negligent care, *inter alia*. In addition, this practice placed Defendant at risk of the state suspending its funding.

14. Due to the grave implications of the foregoing, Messineo reported the same to CEO Harris. Harris told Messineo to speak with Program Director Cheryl Carroll regarding these issues.

15. Messineo then spoke with Carroll who stated her belief that there was a three (3) day grace period where individuals without background checks or certifications could work with the clients. Messineo told Carroll there was no such grace period.

16. Defendant continued to allow individuals without background checks and up-to-date training and certifications to work with its clients.

17. Some of these employees were let go after their background check came back with issues.

18. And, due to Defendant's reckless and egregious decision to send employees to work, some individuals listed on the sex and violent offenders registries were allowed to work in the vulnerable clients' homes before their offenses were discovered.

19. Messineo also reported her concerns to Defendant's Owner Phil Rhoades. Rhoades told Messineo to speak with Carroll about her concerns. Messineo told Rhoades she had already spoken to Carroll. Rhoades then told Messineo they would continue to operate in this matter until they "got caught" by the government.

20. In or around March 2014, Carroll made a comment to Messineo that she was surprised CEO Harris did not hire someone younger as the Director of Human Resources.

21. In or around April 2014, CEO Harris separated from his employment with Defendant. Thereafter, Messineo reported to Rhoades. However, Rhoades often directed Messineo to speak with Carroll about operational matters formerly handled by Harris.

22. Due to Messineo's continued concerns about Defendant's unlawful hiring practices and the significant risk this posed to the vulnerable clients, Messineo met with Carroll on or about May 12, 2014. Messineo again told Carroll, without clean background checks, training and certifications before hiring, their clients were at risk of being neglected and abused. This is especially significant where many of Defendant's clients cannot communicate whether they are being mistreated.

23. In response, Carroll told Messineo that she would make sure those employees without background checks, training and/or certifications would not be scheduled to work <u>when state auditors performed site visits</u>. Carroll asked Messineo whether she was going to tell Messineo's former boss, the Director of DDSD, about Defendant's failure to adhere to DDSD regulations. Messineo told Carroll that she would if the clients' lives were in danger, to which Carroll responded that Messineo was being "oversensitive." Carroll gave no indication that Messineo's concerns would be resolved.

24. The following day, on or about May 13, 2014, Carroll threatened Messineo that her 90-day probationary period was not up yet and that a lot could happen before her probationary period expired.

25. On or about May 14, 2014, Messineo was informed of her termination by Carroll and Quality Assurance Director Tom Ray. Carroll told Messineo the reason for her termination was allegedly that she was not a good fit for the company and that Messineo could now spend more time with her grandchildren.

26. Messineo was not disciplined during her employment with Defendant. After her termination, Messineo discovered that Defendant changed its proffered reason for her termination, claiming now that she was fired for approving an employee payroll advance which Defendant had denied, using the company credit card for personal purchases, and not following Defendant's instructions.

27. Such reasons were false. Messineo had approval from Harris or Rhoades before issuing any payroll advances. And, Messineo did not purchase any personal items with the company credit card. At all times, Messineo performed all tasks assigned to her.

28. Upon information and belief, Messineo's job duties are now being performed by an individual in her early 30s.

29. As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

30. The matters alleged above constitute violations of the ADEA in the form of age

discrimination.

31. Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was terminated, and her position was not eliminated at the time of her termination.

32. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991. Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct.

### COUNT II - Whistleblowing

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

33. The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

34. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

35. Because the actions of the Defendant were willful, wanton or, at the least, in

reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 6th DAY OF MAY, 2015.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA #31744
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800         (telephone)
(405) 239-3801         (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED